## APPEAL OF THE HOF BRAU CO.

Docket No. 6134.   Promulgated March 10, 1927.

1. Salaries, disallowed by the Commissioner, allowed as a deduction.

2. The Commissioner decreased invested capital by the amount of additional tax claimed by him to be due, but not yet assessed and in dispute in another proceeding before the Board. In the absence of any evidence of the correct tax liability for such prior year, the action of the Commissioner is approved.

*W. W. Spalding, Esq.,* for the petitioner.
*Arthur H. Murray, Esq.,* for the Commissioner.

Taxpayer appeals from the determination by the Commissioner of a deficiency of $4,593.18 in income and profits taxes for the fiscal year ended October 31, 1920. The issues involve the disallowance by the Commissioner of salaries of officers, a reduction of invested capital for income and profits taxes of earlier years, and the reduction of current earnings by the amount of a tentative tax in computing the deduction from invested capital for dividends paid during the year. Two other issues raised were abandoned.

## FINDINGS OF FACT.

The taxpayer is a California corporation with its principal office in San Francisco.

In the return of the taxpayer for the taxable year there was deducted from gross income $36,000 for salaries paid to the two executives, L. H. Hirsch and H. L. Hirsch. Of this amount, $8,374.10 was disallowed by the Commissioner. The salaries, $1,500 per month to each of the two executives, were duly authorized by the board of directors prior to the beginning of the taxable year. The stock holdings in the appellant company were as follows: From November 1, 1919, to April 19, 1920, L. H. Hirsch, 349 shares; H. L. Hirsch, 650 shares; W. P. Caubu, 1 share; and from April 20, 1920, to October 31, 1920, L. H. Hirsch, 1 share; H. L. Hirsch, 1 share; W. P. Caubu, 1 share; W. P. Caubu, trustee for Elizabeth M. Hirsch, 997 shares. H. L. Hirsch is the father of L. H. Hirch; Elizabeth M. Hirsch is the wife of H. L. Hirsch and the step-mother of L. H. Hirsch.

In 1920 the taxpayer was conducting a restaurant in the basement of the Pacific Building, Fourth and Market Streets, San Francisco. The name, originally, was the Hof Brau Restaurant, now known as " The States." The business was operated by Mueller & Company up to and including 1910. Under the Mueller management the restaurant was unsuccessful and it was not until it was taken over by the appellant company, in 1912, that financial success came to it. The Hof Brau then became a family restaurant whose specialty was the serving of good food at reasonable prices, with the attendant feature of music but no cabaret or dancing. The executives, Messrs. Hirsch, conceived the idea of increasing the business of the restaurant through a new form of advertising, e. g., the introduction and popularizing of abalone, reindeer meat, and the meat of other game animals. Under the Hirsch management, the business of the restaurant developed until it became one of the largest west of Chicago. During the taxable year the floor space of the restaurant was 30,000 square feet, with a seating capacity of 1,200 people. The number of customers served during the year was 853,660. The sales of the year were $890,463.70, made up as follows: Restaurant proper, $800,837.25; soft drinks, ice cream, etc., $79,850.55; and cigar stand, $9,775.90. There were approximately 150 employees, with an annual pay roll of $214,823.25. The hours of business extended from seven in the morning to one o'clock the following morning.

H. L. Hirsch, the father, has had thirty years experience in the restaurant and hotel business and during that period has acquired the reputation of being one of the most successful restaurateurs of the country. His special task was that of satisfying the public with the service and food of the Hof Brau Restaurant. With his son, he

also determined the policies of the company, employed and trained the help, and solved its daily problems as they arose. His affiliation with a large number of societies and clubs enabled him to have their banquets and dinners at the Hof Brau Restaurant. He was the president of the appellant company.

L. H. Hirsch, the son, who has had fifteen years experience in the restaurant business, had charge of "the back end of the house which is known as the operating end, the office and the production end," including the kitchen. He had charge of the buying of the food and general supervision over all departments of the kitchen. His also was the duty of seeing that the records of the company were properly kept. He was the secretary of the company.

Each of the officers devoted his entire time to the business. The hours of their service were from ten in the morning until one the following morning, seven days of the week. Sunday was one of the busiest days of the week for the officers, owing to the increased volume of custom on Sunday afternoon and evening. Their duties were so exacting as to deprive them largely of any home life. In the taxable year here involved, two special problems required solution by the officers. The first of these, the labor problem, which became very acute in 1920, required tact and patience. The second of these, prohibition, involved changes of policy and a well-balanced revision of prices to meet the changed conditions due to prohibition on the sale of wines and beer, which had theretofore been sold by the company in connection with its restaurant business. Both of these problems were solved successfully. Prior to prohibition there were five restaurants in the City of San Francisco of the same general type as the Hof Brau. Of these the Hof Brau alone survived.

For the fiscal year ended October 31, 1919, taxpayer paid its executive officers $41,700, of which $36,000 was allowed as a deduction by the Commissioner. For the fiscal year ended October 31, 1920, taxpayer paid its officers $36,000, of which $8,374.10 was not allowed as a deduction by the Commissioner. After payment of such salaries, net income for 1919 was $28,278.83 and for 1920 it was $11,498.84.

In computing the invested capital there were deducted the following amounts: for taxes of 1919, prorated from their due date, $9,020.53; for additional taxes of 1918, $9,564.24. The additional taxes for 1918 were not assessed prior to or during the taxable year. The correct amount of the 1918 tax liability is in dispute in another proceeding pending before the Board.

On January 5, 1920, the appellant paid a dividend of $29,271.01. The Commissioner determined that the earnings of the current year were $25,096.22. He computed a tentative tax thereon of $5,776.18, and reduced the earnings available for dividends to $19,320.06. He

prorated this amount and thereby determined the earnings from November 1, 1919, to January 5, 1920, available for the payment of the dividend to be $3,483.94. He subtracted this amount from the dividends paid on January 5, 1920, and thereby determined that the difference, $25,787.07, was paid from earnings of prior years. This amount of $25,787.07 he deducted from invested capital for the balance of the fiscal year after January 5, 1920, by prorating such amount on the basis of a full year, thereby reducing invested capital by $21,136.94.

OPINION.

Phillips: The petitioner claimed as a deduction salaries paid to its two principal officers in the amount of $36,000. The Commissioner disallowed $8,374.10 as excessive. The salary paid was authorized by the directors prior to the beginning of the taxable year.

While the salaries paid by the petitioner to its officers were large, they do not appear to be excessive when consideration is given to the character of the services performed and their importance to the corporation. These officers were required to devote substantially all of their waking hours, seven days a week, to the business. Not only did they so manage the restaurant in the face of labor troubles and the loss of revenue from its bar that it survived when its competitors were forced to close; they show a profit of $11.50 per share on the capital stock. Furthermore, the amount paid is the same as was allowed by the Commissioner in the previous year and, in view of all the circumstances, we see no good reason why it should be regarded as excessive for 1920. We therefore reverse the action of the Commissioner with respect to the disallowance of the portion of this salary in issue.

The issue raised with reference to the reduction of invested capital by additional taxes for 1919 prorated from their due date must be decided adversely to the taxpayer under the provisions of section 1207 of the Revenue Act of 1926. See *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168. It appears further that the Commissioner has reduced invested capital for 1920 by an additional tax for 1918 determined by him but not yet assessed and which is the subject of another proceeding before the Board. At the time the hearing was had in this appeal, this second proceeding was not yet at issue, no motion was made to postpone the consideration of the present hearing until the two proceedings could be consolidated, nor was any evidence offered with respect to the tax liability for the prior year. The presumption is in favor of the correctness of the Commissioner's determination and a showing merely that the tax liability is in dispute is insufficient to enable the Board to determine affirmatively that there is any error in the Commissioner's computation.

The third issue involves the reduction of invested capital by reason of the payment of a dividend during the taxable year. In determining how much of such dividend was paid from earnings of the current year and how much from surplus accumulated in prior years, the Commissioner reduced the earnings of the current year by a tentative income and profits tax thereon. Upon the ground that the income and profits tax does not accrue and become a liability from day to day, the Board decided, in the *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135, that earnings of the current year to the date of declaration of the dividend were not to be reduced by such a tentative tax in determining what portion of dividends were paid from such earnings. The question here involved is controlled by that decision.

*Decision will be entered on 20 days' notice, under Rule 50.*